# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| JOHN WILLIAM STEWART,         ) | |
|          ) | |
|      **Plaintiff,**         ) | |
|          ) | |
| **v.**                                 ) | **No. 3:08-CV-475** |
|          ) | **(Phillips)** |
| **DEUTSCHE BANK NAT'L TRUST CO.,** *et al.*, ) | |
|          ) | |
|      **Defendants.**       ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the following motions:

- Motion for Summary Judgment by Shapiro & Kirsch, LLP ("S&K") [Doc. 43];

- Motion for Summary Judgment by Deutsche Bank National Trust Company ("Deutsche Bank") and Ocwen Loan Serving, LLC ("Ocwen") [Doc. 46]; and

- Motion to Adopt Motion for Summary Judgment by Tennessee Home Mortgage [Doc. 50].

On July 2, 2010, defendant S&K filed a Motion for Summary Judgment [Doc. 43]. S&K argues that this lawsuit should be dismissed for two reasons. [Id.]. First, S&K argues that Plaintiff's claims are barred by the doctrine of *res judicata*. [Id.]. Alternatively, S&K argues that Plaintiff's claims should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Id.]. On July 6, 2010, defendants Deutsche Bank and Ocwen filed a Motion for Summary Judgment [Doc. 46] based on the same grounds. On July 8, 2010, defendant Tennessee Home Mortgage filed a Motion to Adopt the Motion for Summary Judgment filed by Deutsche Bank

and Ocwen [Doc. 50]. On July 22, 2010, Plaintiff, appearing *pro se*, responded to the Motion for Summary Judgment filed by Deutsche Bank and Ocwen [Doc. 52].

For the following reasons, Defendants' Motions for Summary Judgment [Docs. 43, 46] are **GRANTED**, whereby this lawsuit is **DISMISSED WITH PREJUDICE**. In addition, Tennessee Home Mortgage's Motion to Adopt [Doc. 50] is **GRANTED**, whereby Tennessee Home Mortgage is permitted to adopt Deutsche Bank's and Ocwen's Motion for Summary Judgment.

## I. INTRODUCTION

As a preliminary matter, the Court notes that it has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

On October 25, 2002, Plaintiff obtained a loan from New Century Mortgage Corporation ("New Century"). [*See* Deed of Trust, Doc. 45-1 at 7-22]. The loan was secured by real property located at 10707 Eagles Glen Drive, Knoxville, Tennessee, 37922 (hereafter, the "Property"). [Id.]. The Deed of Trust listed New Century as the lender and First Security Title as the trustee. [Id.]. In addition, the Deed of Trust listed $200,000.00 as the principal amount due under the loan. [Id.]. On November 7, 2002, the Deed of Trust was recorded with the Knox County Register of Deeds Office as "Instrument No. 200211070040905." [*See* First Amended Complaint, Doc. 6 at 1].

In March 2003, the servicing of the loan was transferred to Ocwen. Around this time, Deutsche Bank also became trustee. On October 17, 2003, Ocwen mailed a letter notifying Plaintiff that he was delinquent in his loan payments. [Letter Notifying Plaintiff of Delinquency on October 17, 2003, Doc. 46-3]. On June 8, 2004, Plaintiff entered a forbearance agreement. [First Forbearance Agreement, Doc. 45-2 at 7-10]. Under this agreement, Plaintiff acknowledged his

delinquency and promised to make payments under the loan. [Id.]. After entering the forbearance agreement, Plaintiff filed five separate Chapter 13 bankruptcy petitions in the United States Bankruptcy Court for the Eastern District of Tennessee. [*See* Bankruptcy Court Documents, Doc. 45-1 at 29-67]. The first bankruptcy petition was filed on November 26, 2004. [Id.]. The first four petitions were dismissed for failure to make plan payments. [Id.]. Plaintiff executed a second forbearance agreement in April 2005. [Second Forbearance Agreement, Doc. 45-2 at 1-5].

As of January 17, 2008, Plaintiff's past due payments totaled $104,497.62. Based upon Plaintiff's default, Defendants sought to foreclose on the Property. In July 2007, Deutsche Bank, acting as trustee, executed a Substitution of Trustee in which S&K was appointed as the substitute trustee. [Substitution of Trustee, Doc. 46-4]. The Substitution of Trustee stated that Deutsche Bank was the owner of the indebtedness described in the Deed of Trust, and that S&K–as the substitute trustee–was directed to foreclose upon the Property. [Id.].

After the fourth bankruptcy petition was dismissed, S&K published a notice of foreclosure sale in the local newspaper, the Knoxville News Sentinel. [Affidavit of Publication, Doc. 45-1 at 68]. The notice stated that the foreclosure sale would occur on February 7, 2008, at the Knox County Courthouse. [Id.]. S&K also mailed a separate notice to Plaintiff regarding the foreclosure sale. [Notice of Trustee's Sale Sent to Plaintiff on January 15, 2008, Doc. 45-1 at 69]. On February 7, 2008, S&K sold the Property to Deutsche Bank for $261,330.00. On the same day, Plaintiff filed his fifth bankruptcy petition. [*See* Docket Sheet for Plaintiff's Fifth Bankruptcy Petition, Doc. 45-1 at 74-78]. The bankruptcy court imposed an automatic stay, which in turn prevented Defendants from taking possession of the Property. [Id.].

On February 20, 2008, Ocwen filed a motion to relieve the Property from the automatic stay,

and to confirm the foreclosure sale. [Ocwen's Motion for Relief from Automatic Stay and Permission to Proceed with State Remedies, Doc. 45-1 at 79-80]. On March 26, 2008, the bankruptcy court lifted the automatic stay. [Bankruptcy Court Order Granting Relief from Automatic Stay, Doc. 45-1 at 84-85]. The bankruptcy court also held that Ocwen was allowed to proceed with its remedies at state law for seeking possession of the Property. [Id.].

Even though the automatic stay was lifted, Plaintiff continued to remain on the Property. Turning to state law remedies, Deutsche Bank filed a Forcible Entry and Detainer Warrant ("Detainer Warrant") in the Knox County General Sessions Court ("General Sessions Court") to take possession of the Property. [Detainer Warrant, Doc. 46-7]. In particular, Deutsche Bank requested that "plaintiff(s) be restored to the possession of the within described property [the Property], for which a Writ of possession may issue, pursuant to the law and court costs are adjudged against the defendant(s)." [Id.].

On September 9, 2008, the General Sessions Court conducted a trial to determine Deutsche Bank's right to possession of the Property. Plaintiff appeared *pro se* at the trial. Following the trial, Deutsche Bank was awarded possession of the Property. On September 22, 2008, Plaintiff filed an appeal, but it was denied for being untimely. [Appeal Order, Doc. 46-8].

On October 6, 2008, Plaintiff filed suit in the Circuit Court for Knox County, Tennessee. [Complaint as Removed from State Court, Doc. 1-1]. In the complaint, Plaintiff filed several causes of action against the Defendants relating to the foreclosure. This includes claims of fraud, negligence, civil conspiracy, wrongful foreclosure, and a claim brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq*. [Id.]. On November 20, 2008, the case was removed to federal court. [Notice of Removal, Doc. 1]. On

January 30, 2009, Plaintiff filed an amended complaint.[1]  [Plaintiff's Amended Complaint, Doc. 6].

In July 2010, Defendants moved for summary judgment on two grounds.  [Motions for Summary Judgment and Motion to Adopt Motion for Summary Judgment, Docs. 43, 46, 50].  First, Defendants argue that Plaintiff's claims are barred by the doctrine of *res judicata*.  [Id.].  Alternatively, Defendants argue that Plaintiff's claims should be dismissed for failure to state claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Id.].  On July 22, 2010, Plaintiff responded in opposition.  [Doc. 52].

## II.    STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zendith Radio Corp., 475 U.S. 574, 587 (1986).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); *see also, e.g.* Bridgeport Music, Inc. v. WB Music Corp., 508 F.3d 394, 397 (6th Cir. 2007) ("The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should

---

[1]  The Court notes that Plaintiff did not comply with Rule 15 of the Federal Rules of Civil Procedure when he filed the Amended Complaint [Doc. 6].  Plaintiff did not seek leave from the Court to file an amended complaint, nor did he receive written consent from the Defendants.  *See* Fed. R. Civ. P. 15(a)(2).  However, in the interests of justice, and pursuant to Rule 15 of the Federal Rules of Civil Procedure, the Court will allow Plaintiff's complaint to be amended, as set forth in Doc. 6.

be made in favor of the non-moving party."). With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325. The burden then shifts to the non-moving party to demonstrate the existence of genuine issues of material fact. <u>Id.</u> at 324. If the non-moving party fails to meet this burden, the moving party is entitled to summary judgment.

## III.     ANALYSIS

### A.     The Majority of Plaintiff's Claims Are Barred By *Res Judicata*

#### 1.     Introduction

After Deutsche Bank filed the Detainer Warrant, the General Sessions Court entered judgment in favor of Deutsche Bank. Defendants argue that the state court judgment bars the present lawsuit under the doctrine of *res judicata*. For the most part, Defendants are correct. Any remaining claims are appropriately dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Part III.B.

Under the doctrine of *res judicata*, a final judgment on the merits bars subsequent lawsuits between the same parties (or their privies) based upon the same cause of action. *See* <u>Kane v. Magna Mixer Co.</u>, 71 F.3d 555, 560 (6th Cir. 1995); <u>Hayes v. City of Memphis</u>, 108 F. App'x 262, 264 (6th Cir. 2004). In particular, the doctrine precludes parties (or their privies) from "relitigating issues that were or could have been raised" in the prior action. <u>Kane</u>, 71 F.3d at 560 (quoting <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 (1981)). This applies to both state and federal court judgments that were decided on the merits. *See* <u>Abbott v.Michigan</u>, 474 F.3d 324, 330 (6th Cir. 2007) ("Federal courts must give the same preclusive effect to a state-court judgment as that

judgment receives in the rendering state.") (citing 28 U.S.C. § 1738).

When *res judicata* is based upon a prior state court judgment, federal courts apply the substantive law (regarding *res judicata*) of the state in which the judgment was rendered. *See* Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 n. 5 (6th Cir. 1998) (recognizing that "[f]ederal law requires us to consult the relevant state law to determine the potential preclusive effect of a prior state court judgment," and that "[b]ecause [the defendant's] collateral estoppel arguments rests upon the decision of a Michigan agency, we consult the state law of Michigan"); Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) (recognizing that 28 U.S.C. § 1738 "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered"); Gen. Elec. Med. Sys. Europe v. Prometheus Health, No. 09-CV-3573, 2010 WL 3521918, at *5 n.1 (6th Cir. Sept. 8, 2010) ("The parties rely on Ohio res judicata law. Ohio law does not apply here, however, because the issue–[the party's] liability–was previously determined by a federal court, not a state court."); Macy v. Hopkins Cnty. Sch. Bd. of Educ., 484 F.3d 357, 367-68 (6th Cir. 2007) (applying Kentucky law to determine whether to give preclusive effect to a prior state court judgment). Accordingly, the Court shall apply Tennessee law because the prior state court judgment was rendered by the Knox County General Sessions Court.

In Tennessee, a party asserting *res judicata* must show that "(1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action." Lien v. Couch, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998) (citing Lee v. Hall, 790 S.W.3d 293, 294 (Tenn. Ct. App. 1990)). This doctrine has been described as "a claim preclusion doctrine that promotes finality in litigation." Lien, 993 S.W.3d at 55. As the Tennessee

Supreme Court has stated, this doctrine bars "a second suit between the same parties or their privies on the same cause of action with respect to all of the issues *which were or could have been litigated in the former suit*." Creech v. Addington, 281 S.W.3d 363, 376 (Tenn. 2009) (emphasis added). The "primary purposes of the doctrine are to promote finality in litigation, prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits." Id. (citations omitted). *See also* Moulton v. Ford Motor Co., 533 S.W.3d 295, 296 (Tenn. 1976) ("[R]es judicata is not based upon any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation."); Jordan v. Johns, 79 S.W.3d 798, 802 (Tenn. 1935) ("[P]ublic policy dictates that litigation should be determined with reasonable expedition, and not protracted through inattention and lack of diligence on the part of litigants or their counsel.").

### 2. Applying the Elements of *Res Judicata*

#### a. A Court of Competent Jurisdiction Rendered the Prior Judgment

The General Sessions Court qualifies as a "court of competent jurisdiction" because it had the authority to decide the merits of the detainer warrant. *See* T.C.A. § 29-18-107 ("All cases of forcible entry and detainer, forcible detainer, and unlawful detainer, may be tried before any one (1) judge of the court of general sessions of the county in which the acts are committed, who shall decide the particular case, and all questions of law and fact arising."). The doctrine of *res judicata* therefore applies to the judgment of the General Sessions Court regarding the lawfulness of the foreclosure, and Deutsche Bank's right to possession of the Property.

#### b. The Prior Judgment Was Final and On the Merits

As the Tennessee Supreme Court has stated, a judgment is final if it "resolves all the issues

in the case, 'leaving nothing else for the trial court to do.'" In re Estate of Ridley, 270 S.W.3d 37, 40 (Tenn. 2008) (quoting In re Estate of Henderson, 121 S.W.3d 643, 645 (Tenn. 2003)). In Tennessee, "any dismissal of a claim other than a dismissal for lack of jurisdiction, for lack of venue, or for lack of an indispensable party 'operates as an adjudication upon the merits,' unless the trial court specifies otherwise in its order for dismissal." Creech, 281 S.W.3d at 378 (quoting Tenn. R. Civ. P. 41.02(3)).

The order by the General Sessions Court was clearly a final judgment. First, it ruled in favor of Deutsche Bank on the merits regarding the lawfulness of the foreclosure (and therefore the right to possession of the Property). Second, the judgment was not appealed in a timely manner. *See* CitiFinancial Mortg. Co., Inc. v. Beasley, No. W2006-00386-COA-R3CV, 2007 WL 77289, at *4 (Tenn. Ct. App. Jan. 11, 2007) ("An unsuccessful defendant in a forcible entry and detainer (FED) action has ten (10) days following the general sessions judgment to file for appellate review in circuit court.") (citing T.C.A. § 29-18-128). Accordingly, the judgment entered by the General Sessions Court was final and on the merits regarding the lawfulness of the foreclosure, and Deutsche Bank's possession rights.

### c.    The Same Parties or Privies Were Involved in Both Proceedings

Under the third element, "the same parties, or their privies, [must] be involved in both suits." Richardson v. Tenn. Bd. of Dentistry, 913 S.W.2d 446, 459 (Tenn. 1995). In the context of *res judicata*, "privity" does "not embrace relationships between persons or entities, but rather [goes] to the subject matter of the litigation." Phillips v. Gen. Motors Corp., 669 S.W.2d 665, 669 (Tenn. Ct. App. 1984). Thus, Tennessee courts have rejected "privity" as defined in the traditional sense: "Privity in the traditional sense meant mutual or successive relationship to the same rights of

property, but various states have employed other definitions when used in the context of res judicata and collateral estoppel." Id. *See also* Harris v. St. Mary's Med. Ctr., Inc., 726 S.W.2d 902, 905 (Tenn. 1987) (holding that "[p]rivity within the meaning of the doctrine of res judicata is privity as it exists in relation to the subject matter of the litigation"); Carson v. Challenger Corp., No. W2006-00558-COA-R3-CV, 2007 WL 177575, at *3 n.3 (Tenn. Ct. Appl. Jan. 25, 2007) (recognizing that in the context of *res judicata* "privity" means "an identity of interests relating to the subject matter of the litigation, and it does not embrace relationships between the parties themselves."); Acuity v. McGhee Eng'g, Inc., 297 S.W.3d 718, 735 (Tenn. Ct. App. 2008) ("The words 'privy' and 'privity' do not necessarily have the same meaning in the context of res judicata as they do in the context of contractual relationships.") (citation omitted).

New Century was the lender that originally provided Plaintiff with the loan. Ocwen eventually became the servicer of the loan. Deutsche Bank eventually became trustee. S&K was appointed as substitute trustee to foreclose upon the Property, which it did in February 2008. In the context of *res judicata*, the Court does not look at the formal relationship between the Defendants; rather, the Court examines whether the parties shared an identity of interests. *See* Edwards v. City of Memphis, No. W2007-02449-COA-R3-CV, 2009 WL 2226222, at * 3 (Tenn. Ct. App. July 27, 2009) ("In the context of res judicata, the term 'privity' does not denote relationships between the parties themselves, but rather concerns a shared identity of interests relating to the subject matter of the litigation[.]") (citations and quotations omitted). Accordingly, the Court finds that Defendants had a shared interest in the subject matter of the General Sessions case. In the present case, each Defendant seeks to avoid personal liability by relying upon the state court's judgment regarding the lawfulness of the foreclosure, and Deutsche Bank's right to possession of the Property. This shared

interest in the subject matter of the General Sessions proceeding is enough to establish "privity" for purposes of *res judicata*.

### d.        Both Proceedings Involve the Same Cause of Action

### 1.        Introduction

In <u>Creech</u>, the Tennessee Supreme Court adopted the "transactional" approach for determining whether two proceedings constitute the "same cause of action" for purposes of *res judicata*. 281 S.W.3d at 379. In doing so, the court abandoned the "primary right" approach in favor of the "broader standard [the transactional test] espoused by the Second Restatement." <u>Id</u>. This test has been defined as follows:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

<u>Id</u>. (quoting Restatement (Second) of Judgments § 24(1)). Under the transactional approach, "the concept of a transaction is . . . used in the broad sense" and "connotes a natural grouping or common nucleus of operative facts." <u>Creech</u>, 281 S.W.3d at 380 (quoting Restatement (Second) of Judgment. § 24 cmt. b). The Restatement further provides: "[w]hat factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24(2).

In <u>Creech</u>, the Tennessee Supreme Court noted that the term "transaction" for purposes of *res judicata* "is intended to be analogous to the phrase 'transaction or occurrence' as used in the

Federal Rules of Civil Procedure." 281 S.W.3d at 380 (citing Fed. R. Civ. P. 13(a)(1) (compulsory counterclaims)). For purposes of assessing compulsory counterclaims, the Court of Appeals for the Sixth Circuit applies a "logical relationship" test to determine whether a claim arises out of the same "transaction or occurrence." *See* Sanders v. First Nat'l Bank & Trust Co. in Great Bend, 936 F.2d 273, 277 (6th Cir. 1991). Under this test, claims arise out of the same transaction or occurrence if "the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." Id. (citing Moore v. N.Y. Cotton Exch., 270 U.S. 593 (1926)). *See also* Roberts v. Vaughn, No. W2008-01126-COA-R3-CV, 2009 WL 1608981, at *7-8 (applying federal case law regarding compulsory counterclaims to determine whether a claim was barred under *res judicata*, following the Tennessee Supreme Court's decision in Creech).

Defendants argue that the state court proceeding and the present case constitute the "same cause of action" because they are based upon the same transaction or series of transactions: the foreclosure of the Property. After Deutsche Bank filed the detainer warrant, the General Sessions Court determined that Deutsche Bank was entitled to possession of the Property, and that the foreclosure sale was lawful. The majority of Plaintiff's claims in the present suit are based upon the alleged unlawfulness of the foreclosure sale. That issue has already been decided in the prior state court proceeding. Accordingly, the majority of Plaintiff's claims are barred by *res judicata*.

### 2. Promissory Fraud, Concealment and Suppression of Fact, Misrepresentation

In his first cause of action, Plaintiff alleges that "in the entire course of foreclosure, Plaintiff was a victim of intentional misrepresentation." [Plaintiff's Amended Complaint, Doc. 6 at 11]. Plaintiff attempts to disguise the nature of his claim, but in reality, it is nothing more than an attempt

to relitigate issues that have already been decided, namely, the lawfulness of the foreclosure.  The Court of Appeals for the Sixth Circuit has routinely looked at the substance of a claim–rather than its label–in determining whether a claim is barred by *res judicata*.  The following cases are instructive.

In Givens v. Homecomings Financial, the plaintiff, a mortgagor who defaulted on his loan payments, filed suit under the Fair Debt Collection Practices Act ("FDCPA") against a mortgagee and the attorneys who assisted in the foreclosure sale.  278 F. App'x 607, 609 (6th Cir. 2008).  The plaintiff alleged that the defendants violated the FDCPA by failing to provide him with sufficient verification of his debt.  Id.  The plaintiff also filed claims of civil conspiracy, intentional infliction of emotional distress, and violations of RICO.  Id.

In Givens, the plaintiff filed the federal lawsuit after a state court granted the mortgagee possession of the property.  Id.  Although labeled as an FDCPA action, the Court of Appeals recognized that it was nothing more than an attempt to relitigate the foreclosure issue that had already been decided by a state court.  Id.  This was made abundantly clear by the relief that the plaintiff sought: an injunction against enforcement of the state court order.  [Id.].  As the Court of Appeals stated, "[the plaintiff's] arguments all come down to one premise: that JP Morgan Chase [the mortgagee] was not entitled to possession of the property in question.  That issue, however, has already been litigated in the Michigan courts."  Id.  The federal district court dismissed the action, and the Court of Appeals affirmed, holding that the plaintiff's claims were barred by *res judicata*. Id.

In Rowe v. Bank One, Indianapolis, N.A., the plaintiff filed suit under 42 U.S.C. § 1983, arguing "that the defendant improperly foreclosed and evicted him from his property in 1988 in

violation of Michigan law and his due process and equal protection rights." No. 99-2446, 230 F.3d 1359 (6th Cir. 200) (unpublished table decision). Prior to the filing of the federal lawsuit, a state court ruled in favor of the federal defendant on the merits regarding the lawfulness of the foreclosure and eviction. Id. at *1. The Court of Appeals affirmed dismissal of the federal action, holding that the § 1983 action was barred by *res judicata*. [Id.]. In particular, the court held that "the issues raised in the action, i.e., Rowe's allegations that the defendant instituted an 'illicit' foreclose action by engaging in perjury and falsifying records, were either raised or could have been raised in the prior state court actions." Id.

Like the plaintiffs in Givens and Rowe, the majority of Plaintiff's claims–although labeled differently–are nothing more than an attempt to relitigate issues that have already been decided in a prior state court proceeding. In fact, the type of relief that Plaintiff seeks makes this point especially clear. [*See* Doc. 6 at 17]. Like the plaintiff in Givens, Plaintiff seeks to overturn the state court's order of possession. [Id.]. In the Amended Complaint, Plaintiff requests that the Court order that "Plaintiff have title to the subject property vested in plaintiff alone and that the defendant therein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said defendants, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff herein . . ." [Id.]. Based upon the type of relief that Plaintiff seeks, it is clear that Plaintiff is attempting to relitigate issues that have already been decided: the lawfulness of the foreclosure, and Deutsche Bank's right to possession of the Property.

Plaintiff's fraud claim is based upon the lawfulness of the foreclosure-an issue that has already been decided. Accordingly, Plaintiff's "promissory fraud, concealment and suppression of fact, misrepresentation" claim is the "same cause of action" for purposes of *res judicata*, and

therefore is **DISMISSED**.

### 3.      Negligence

In his second cause of action, Plaintiff alleges that "Deutsche Bank National Trust Company and Shapiro and Kirsch negligently are attempting to eject Plaintiff *from the home he rightfully owns since the foreclosure performed by Shapiro and Kirsch is void*." [Id. at 11] [emphasis added]. The General Sessions Court has already determined that the foreclosure was lawful. Plaintiff's negligence claim is nothing more than an attempt to relitigate an issue that has already been decided. Accordingly, Plaintiff's negligence claim is the "same cause of action" for purposes of *res judicata*, and therefore is **DISMISSED**.

### 4.      Wantonness

In his third cause of action, Plaintiff alleges that "Deutsche Bank National Trust Company, as Trustee and/or Ocwen Loan Servicing and Shapiro and Kirsch with reckless indifference to the consequences, consciously and intentionally are acting to eject the Plaintiff from the home he rightfully owns." [Id. at 12]. In addition, Plaintiff alleges that the Defendants "intentionally instituted this action with the knowledge that the home of the Plaintiff does not belong to Deutsche Bank . . ." [Id.].

Once again, Plaintiff is attempting to relitigate an issue that has already been decided: the lawfulness of the foreclosure, and Deutsche Bank's right to possession of the Property. Accordingly, Plaintiff's wantonness claim is the "same cause of action" for purposes of *res judicata*, and therefore is **DISMISSED**.

### 5.      Civil Conspiracy

In his fourth cause of action, Plaintiff alleges that "Deutsche Bank National Trust Company,

as Trustee and/or Ocwen Loan Servicing, directed, or controlled the actions of Shapiro and Kirsch and its employee and associates." [Id. at 13]. While Plaintiff has labeled his fourth claim as "respondeat superior liability"–which is not an independent cause of action, but a theory of liability[2]–Plaintiff appears to argue that Defendants were engaged in a civil conspiracy. For example, Plaintiff alleges that "[t]hese parties [the Defendants] . . . [were] *engaged in a civil conspiracy* to engage in conduct which is unlawful for the purpose of unjustly enriching the members or participants in the joint venture." [Id.].

Plaintiff's ninth cause of action is labeled "civil conspiracy." In that claim, Plaintiff alleges that "Deutsche Bank National Trust Company, as Trustee and/or Ocwen Loan Servicing and Shapiro and Kirsch engaged in an unlawful combination and conspiracy to *foreclose on home loans* against individuals for the purpose of unjustly enriching themselves in violation of law." [Id. at 15] [emphasis added]. Plaintiff's civil conspiracy claim–that is, his fourth and ninth causes of action–are clearly based upon the lawfulness of the foreclosure.[3] That issue has already been

---

[2] *See, eg.*, Willis v. Settle, 162 S.W.3d 169 (Tenn. Ct. App. 2004) (explaining that respondeat superior liability is a theory of liability that applies when "a principal is liable for the negligence or wrongful acts of his agent acting within the actual or apparent scope of his employment in the principal's service") (citations omitted).

[3] In the event that Plaintiff's fourth cause of action–referred to as "respondeat superior liability"–is not based upon the alleged unlawfulness of the foreclosure, that claim would be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To support a claim of civil conspiracy, plaintiffs must establish the following elements: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citation omitted). As the Tennessee Court of Appeals has made clear, "[c]onspiracy claims must be pled with some degree of specificity." Id. (citations omitted). "Conclusory allegations, however, unsupported by material facts will not be sufficient to state such a claim." Id. (citations omitted). With regard to Plaintiff's fourth cause of action, Plaintiff does not identify what alleged unlawful action (or lawful action taken for an unlawful purpose) Defendants conspired to accomplish. Nor does Plaintiff describe the overt acts taken in furtherance of the alleged conspiracy. Thus, with regard to Plaintiff's fourth cause of action, he has failed to plead sufficient facts to support a civil conspiracy claim.

decided by the General Sessions Court.  Accordingly, Plaintiff's civil conspiracy claims are the "same cause of action" for purposes of *res judicata*, and therefore are **DISMISSED**.

### 6.    Slander of Title

In his sixth cause of action, Plaintiff alleges that "Deutsche Bank National Trust Company, as Trustee and/or Ocwen Loan Servicing and Shapiro and Kirsch in filing a foreclosure deed–which is void–has caused a cloud to be placed on the title of the Plaintiff's property."  [Id. at 14]. Essentially, Plaintiff argues that the foreclosure was unlawful.  The lawfulness of the foreclosure has already been decided by the General Sessions Court.  Accordingly, Plaintiff's "slander of title" claim is the "same cause of action" for purposes of *res judicata*, and therefore is **DISMISSED**.

### 7.    Unjust Enrichment

In his eighth cause of action, Plaintiff alleges that "[t]he actions of Deutsche Bank National Trust Company, as Trustee and/or Ocwen Loan Servicing and Shapiro and Kirsch and prior in foreclosing on the home of the Plaintiffs in violation of law resulted in Deutsche Bank National Trust Company, as Trustee and/or Ocwen Loan Servicing and Shapiro and Kirsch being unjustly enriched by the payment of fees, insurance proceeds and equity in the home."  [Id. at 15].  Once again, Plaintiff's claim is based upon the lawfulness of the foreclosure: Defendants would only be unjustly enriched if the foreclosure was unlawful.  This issue–the lawfulness of the foreclosure–has already been decided by the General Sessions Court.  Accordingly, Plaintiff's unjust enrichment claim is the "same cause of action" for purposes of *res judicata*, and therefore is **DISMISSED**

### 8.    Wrongful Foreclosure

In his tenth cause of action, Plaintiff alleges that "Deutsche Bank National Trust Company,

as Trustee and/or Ocwen Loan Servicing and Shapiro and Kirsch have completed a foreclosure proceeding against the Plaintiff *in violation of law*." [Id. at 16] [emphasis added]. The General Sessions Court has already determined that the foreclosure was lawful. Plaintiff's wrongful foreclosure claim is nothing more than an attempt to relitigate an issue–the lawfulness of the foreclosure– that has already been decided. Accordingly, Plaintiff's wrongful foreclosure claim is the "same cause of action" for purposes of *res judicata*, and therefore is **DISMISSED**.

> **9.      Plaintiff Had a Full and Fair Opportunity to Litigate these Issues in the Prior State Court Proceeding**

While the Court finds that the majority of Plaintiff's claims arise out of the same transaction or series of transactions as the prior state court proceeding, the Court must still determine whether Plaintiff had the opportunity in the prior lawsuit to litigate the foreclosure/possession issue. *See* Creech, 281 S.W.3d at 382 (holding that "even where two claims arise out of the same transaction, the second suit is not barred by res judicata unless the plaintiffs had the *opportunity in the first suit to fully and fairly litigate the particular issue giving rise to the second suit*") (emphasis added). In other words, Plaintiff must have been required to raise these issues in the prior state court proceeding as a compulsory counterclaim. *See* Tenn. R. Civ. P. 13.01 (defining compulsory counterclaim as a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . .").

On September 9, 2008, the General Sessions court conducted a trial to determine Deutsche Bank's right to possession of the Property. Plaintiff appeared *pro se* at the trial. Following the trial, Deutsche Bank was awarded possession of the Property. Because a trial was conducted to determine the very issues that Plaintiff now seeks to litigate–the lawfulness of the foreclosure, Deutsche Bank's right to possession of the Property–the Court finds that Plaintiff had a full and fair opportunity to

litigate the issues giving rise to the present suit.

**B.    Plaintiff's Remaining Claims Are Dismissed Under Rule 12(b)(6) of the Federal Rules of Civil Procedure**

**1.    Negligent or Wanton Hiring, Supervision, Training or Retention**

In his fifth cause of action, Plaintiff alleges that "Deutsche Bank negligently or wantonly hired, trained, supervised, or retained the third party defendant Shapiro and Kirsch."  [Plaintiff's Amended Complaint, Doc. 6 at 13].  This claim is not barred by the doctrine of *res judicata* because it does not involve issues of law or fact raised in the prior state court proceeding (or should have been raised in that proceeding).  *See* Sanders, 936 F.2d at 277.  Nevertheless, Plaintiff's claim is dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

To support a claim of negligent hiring, Plaintiff must establish the following elements: "(1) evidence of unfitness for the particular job; (2) evidence that the applicant for employment, if hired, would pose an unreasonable risk to others; and (3) evidence that the prospective employee knew or should have known that the historical criminality of the applicant would likely be repetitive." Counce v. Accension Health, No. M2009-00741-COA-R3-CV, 2010 WL 786001, at *5 (Tenn. Ct. App. Mar. 8, 2010) (citing Gates v. McQuiddy Office Prods., No. 02A01-9410-CV-00240, 1995 WL 650128, at *2 (Tenn. Ct. App. Nov. 2, 1995)).  *See also* Doe v. Catholic Bishop for Diocese of Memphis, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) ("A plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job.") (citation omitted).

Plaintiff has not alleged any facts that would support a negligent hiring, supervision, or retention claim.  All Plaintiff has done is make conclusory allegations that Deutsche Bank

negligently hired S&K.  As the Supreme Court stated in <u>Ashcroft v. Iqbal</u>, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  129 S.Ct. 1937, 1949 (2009) (citations omitted).  In this case, Plaintiff's negligent hiring/supervision claim is nothing more than a "threadbare" recital of the cause of action.  Notably, Plaintiff has failed to allege facts demonstrating that S&K was unfit for its job (instituting foreclosure proceedings), or that S&K posed an unreasonable risk to others.  *See* <u>Counce</u>, 2010 WL 786001, at *5.  Accordingly, Plaintiff's negligent hiring, supervision, or retention claim, is **DISMISSED** for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 2.        Joint Venture Liability

In his seventh cause of action, Plaintiff alleges that "Deutsche Bank National Trust Company, as Trustee and/or Ocwen Servicing and Shapiro and Kirsch, Plaintiff are part of a joint venture defined by controlling law."  [Plaintiff's Amended Complaint, Doc. 6 at 14].  Joint enterprise liability[4] is not a separate cause of action, but rather, a theory of liability.  In particular, it is a theory used to "impute the negligence of one of the parties to the other."  <u>Schwartz v. Johnson</u>, 280 S.W. 32, 33 (Tenn. 1926).  In Tennessee, joint enterprise liability has been described as follows:

> The doctrine of vicarious responsibility in connection with joint
> enterprises rests upon an analogy to the law of partnership.  In a
> partnership, there is a more or less permanent business arrangement,
> creating a mutual agency between the partners for the purpose of
> carrying on some general business, so that the acts of one are to be
> charged against another.  A 'joint enterprise' is something like a

---

[4] While Plaintiff uses the term "joint venture liability," he appears to mean "joint enterprise liability."

> partnership, for a more limited period of time, and a more limited purpose. It is a undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise. The law then considers that each is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest.

Fain v. O'Connell, 909 S.W.2d 790, 792 (Tenn. 1995) (citation omitted). As the Tennessee Supreme Court has stated, the "elements that need to be shown to establish a joint venture among several parties are a common purpose, some manner of agreement among them, and an equal right on the part of each to control both the venture as a whole and any relevant instrumentality." Id. at 793.

Plaintiff has failed to allege sufficient facts to establish a joint venture between the Defendants. Notably, Plaintiff has failed to allege sufficient facts demonstrating that one of the Defendants acted negligently. Without a sufficiently pled negligence claim, Plaintiff's joint enterprise claim–which is not a separate cause of action, but a way to impose liability on other Defendants based upon the negligence of one or more Defendants–must be dismissed. *See* Schwartz, 280 S.W. at 32 ("The underlying principle of the cases holding the *negligence of one of the parties to a joint adventure imputable to the other* must be that each of the parties is the agent of the other, that each is entitled to direct the other in the prosecution of the common enterprise . . .") (emphasis added) (citation omitted). In addition, Plaintiff has failed to allege sufficient facts showing that the Defendants had an equal voice in directing the enterprise (assuming one even existed). *See* Fain, 909 S.W.2d at 792 (defining joint enterprise as "an undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that *all have an equal voice in directing the conduct of the enterprise*") (emphasis added); Schwartz, 280 S.W. at 32 ("The underlying principle of the cases holding the negligence of one of the parties to

a joint adventure imputable to the other must be that each of the parties is the agent of the other, that *each is entitled to direct the other in the prosecution of the common enterprise . . .*") (emphasis added) (citation omitted).   Because Plaintiff has failed to plead sufficient facts to support a negligence claim (with regard to any of the Defendants), and because Plaintiff has failed to establish that Defendants had equal control over the enterprise (assuming one even existed), Plaintiff's "joint venture liability" claim is **DISMISSED** for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 3.    RICO

In his eleventh cause of action, Plaintiff alleges that "the Defendants acts in the initiation and origination of the loan, the pooling and servicing agreements and concealing the true note holder in due course was a scheme of racketeering as that term is defined in RICO, 18 U.S.C. 1961 et seq." [Plaintiff's Amended Complaint, Doc. 6 at 17].   RICO makes it a crime "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."   18 U.S.C. § 1962(c). RICO's provision authorizing civil suits, 18 U.S.C. § 1964(c), states that "[a]ny person injured in his business or property by reason of a violation of 18 U.S.C. § 1962" may bring a RICO suit.   18 U.S.C. § 1964(c).

To state a civil RICO claim, Plaintiff must establish the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."   Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006) (quoting Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)).   In addition, Plaintiff must establish that Defendants "engaged in a 'pattern of racketeering

activity' consisting of at least two predicate acts of racketeering activity occurring with a ten-year period." Moon, 465 F.3d at 723 (quoting 18 U.S.C. § 1961(5)). "Specifically, plaintiffs must establish a predicate act enumerated in 18 U.S.C. § 1961(1)." Melton v. Blankenship, No. 08-5346, 2009 WL 87472, at *2 (6th Cir. Jan. 13, 2009) (citations omitted).

To the extent that Plaintiff relies upon mail fraud[5] as a predicate act, that claim is dismissed for failure to state a claim. In his Amended Complaint, Plaintiff alleges the following:

> In all of the wrongful acts alleged in the complaint, the Defendants and each of them have utilized the United States mail in furtherance of their pattern of conduct to unlawfully collect on negotiable instruments when they were not entitled under the law to do so, and assuming *Arguendo* that they did have the right to foreclose under the note, to profit from those actions in amounts greater that their rights under the not [sic] to do so.

[Plaintiff's Amended Complaint, Doc. 6 at 7]. Under the mail fraud statute, the plaintiff must "show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with specific intent to deceive or defraud." Chaz Concrete Co., LLC v. Codell, No. 3:03-52, 2010 WL 1227750, at *4 (E.D. Ky. Mar. 29, 2010) (quoting Cent. Distrib. of Beer, Inc. v. Conn, 5 F.3d 181, 183 (6th Cir. 1993)). The Court of Appeals for the Sixth Circuit has held that a "scheme to defraud involves '[i]ntentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." Riverview Health Inst., LLC v. Med. Mut. of Ohio, 601 F.3d 505, 513 (6th Cir. 2010). In addition, when a plaintiff attempts to use mail fraud as a predicate offense for a RICO

---

[5] Under 18 U.S.C. § 1961(1)(B), "racketeering activity" is defined to include acts indictable under 18 U.S.C. § 1341, which constitutes mail fraud.

claim, that claim must satisfy the heightened pleading requirements of Rule 9(b) of the Federal

Rules of Civil Procedure. *See, e.g.,* United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342

F.3d 634, 643 (6th Cir. 2003). That rule states, in relevant part: "[i]n alleging fraud or mistake, a

party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ.

P. 9(b). The Court of Appeals has stated that "a plaintiff, at a minimum, must allege the *time, place,*

*and content of the alleged misrepresentation* on which he or she relied; the fraudulent scheme; the

fraudulent intent of the defendants; and the injury resulting from the fraud." Bledsoe, 342 F.3d at

643 (emphasis added) (internal quotation marks and citations omitted). *See also* Leeds v. City of

Muldraugh, 174 F. App'x 251, 254 (6th Cir. 2006) (affirming district court's dismissal of RICO

claim based upon mail fraud because the plaintiff "failed to meet the heightened pleading

requirements" of Rule 9(b) of the Federal Rules of Civil Procedure).

      Plaintiff has failed to meet the pleading requirements of Rule 9(b) because he has not alleged

the time, place, and content of any alleged misrepresentations by the Defendants.[6] Instead, Plaintiff

has made generalized, unsupported allegations that Defendants "utilized the United States mail in

furtherance of their pattern of conduct." [Plaintiff's Amended Complaint, Doc. 6 at 7]. This is not

enough to satisfy the pleading requirements under Rule 9(b). As the Court of Appeals for the Sixth

Circuit has recognized, "Federal Rule of Civil Procedure 9(b)'s requirement that '[i]n alleging fraud

or mistake, a party must state with particularity the circumstances constituting fraud or mistake' has

been applied to allegations of fraud made in support of a RICO claim." Brown v. Cassens Transp.

---

     [6] Recently, the Supreme Court held "that a plaintiff asserting a RICO claim predicated on mail
fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate
causation, that it relied on the defendant's alleged misrepresentations." Bridge v. Phoenix Bond &
Indem. Co., 553 U.S. 639, 660 (2008). While it is true that a plaintiff does not have to rely on the alleged
misrepresentations, the plaintiff must still plead the misrepresentations with some specificity (time, place,
content). In the present case, Plaintiff has failed to meet Rule 9(b)'s pleading requirement.

Co., 646 F.3d 347, 356 n.4 (6th Cir. 2008) (citing <u>Blount Fin. Servs., Inc. v. Walter E. Heller & Co.</u>, 819 F.2d 151, 152-53 (6th Cir. 1987)).   Accordingly, Plaintiff's RICO claim is dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment [Docs. 43, 46] are **GRANTED**, whereby this lawsuit is **DISMISSED WITH PREJUDICE**.  In addition, Tennessee Home Mortgage's Motion to Adopt [Doc. 50] is **GRANTED**, whereby Tennessee Home Mortgage is permitted to adopt Deutsche Bank's and Ocwen's Motion for Summary Judgment.


**IT IS SO ORDERED**.


**ENTER:**


<u>      s/ Thomas W. Phillips      </u>
United States District Judge